**No. 25-20351**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

In the Matter of Scott Vincent Van Dyke,
*Debtor*

Scott Vincent Van Dyke,
*Appellant*

*v.*

Mary Katherine Alonso; Rudolph Culp; Sarah Patel Pacheco,
*Appellees*

**On Appeal from U.S. District Court for the Southern District of Texas**
4:25-CV-1093, Hon. Andrew S. Hanen

## ORIGINAL BRIEF OF APPELLANT SCOTT VINCENT VAN DYKE

Jason W. Burge (La. #30420)
  *Lead Counsel*
Rebekka C. Veith (La. #36062)
Harvey S. Bartlett III (La. #26795)
FISHMAN HAYGOOD L.L.P.
201 Saint Charles Avenue, Ste. 4600
New Orleans, LA 70170
(504) 586-5252 ; (504) 586-5250 fax
jburge@fishmanhaygood.com
rveith@fishmanhaygood.com
tbartlett@fishmanhaygood.com

Matthew B. Probus (Tex. #16341200)
THE PROBUS LAW FIRM
10497 Town & Country Way
Ste. 930
Houston, TX 77024
(713) 258-2700
matthewprobus@theprobuslawfirm.com

*Attorneys for Appellant Scott Vincent Van Dyke*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Mary Katherine Alonso | Bruce Ruzinsky of Jackson Walker, L.L.P. Houston, TX |
| Mary Katherine Alonso | Patrick McDonald of Jackson Walker, L.L.P. Houston, TX |
| Rudolph Culp | Bruce Ruzinsky of Jackson Walker, L.L.P. Houston, TX |
| Rudolph Culp | Patrick McDonald of Jackson Walker, L.L.P. Houston, TX |
| Sarah Patel Pacheco | Bruce Ruzinsky of Jackson Walker, L.L.P. Houston, TX |
| Sarah Patel Pacheco | Patrick McDonald of Jackson Walker, L.L.P. Houston, TX |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Scott Vincent Van Dyke | Rebekka Veith of Fishman Haygood, L.L.P., New Orleans, LA |
| Scott Vincent Van Dyke | Harvey Bartlett of Fishman Haygood, L.L.P., New Orleans, LA |
| Scott Vincent Van Dyke | Jason Burge of Fishman Haygood, L.L.P. New Orleans, LA |
| Scott Vincent Van Dyke | Matthew Probus of Probus Law Firm, Houston, TX |

*/s/    Jason W. Burge*
Attorney of record for Scott Vincent Van Dyke

i

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to 5th Cir. R. 28.2.3 and Fed. R. App. P. 34(a)(1), Appellant Scott Vincent Van Dyke respectfully requests oral argument. While the legal issue guiding the resolution of Mr. Van Dyke's appeal is straightforward, the procedural history leading up to the District Court Judgment is complex, requiring the dialogue among counsel and the Court afforded by oral argument in order to understand the sequence of procedural steps that necessitate reversal of the District Court's Judgment. Moreover, the particular legal issue presented—whether the objective reasonableness test articulated by the Supreme Court in *Taggart v. Lorenzen*, 587 U.S. 1795 (2019), for avoiding an order of contempt for violation of a bankruptcy discharge injunction may be satisfied by *pre*-discharge procedure—is the first time this issue has been addressed by this Circuit, and oral argument on the issue will further aid in disposition of this matter. Appellant, therefore, believes oral argument will benefit the panel.

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF THE ISSUES.............................................................................. 3

STATEMENT OF THE CASE................................................................................. 4

    A. Pre-Discharge Circumstances...................................................................... 4

    B. The Bankruptcy Court's Discharge Order, and Post-Discharge Conduct...... 7

    C. The Bankruptcy Court's Proceedings on the Discharge Injunction
       Violation .................................................................................................... 12

    D. The Appeal to the District Court ................................................................ 19

SUMMARY OF ARGUMENT .............................................................................. 23

ARGUMENT ........................................................................................................ 24

    A. Standard of Review..................................................................................... 24

    B. The District Court Erred, and the Bankruptcy Court Abused its Discretion, in
       Holding that Appellees Could Base a "Fair Ground of Doubt" as to the
       Wrongfulness of Post-Discharge Conduct on a Pre-Discharge Modification
       of the Automatic Stay ................................................................................. 25

       i.   The automatic stay under 11 U.S.C. § 362 ....................................... 28

       ii.   The discharge injunction under 11 U.S.C. § 524(a)........................... 29

       iii.   The Bankruptcy Court erred by conflating the automatic stay and the
          discharge..................................................................................... 31

    C. The Bankruptcy Court Erred, which Error was Magnified and Repeated by
       the District Court's Affirmance, in Ruling on Mr. Van Dyke's Show Cause
       Motion Without Noticing it for Hearing or Taking Evidence...................... 35

CONCLUSION...................................................................................................... 37

CERTIFICATE OF SERVICE ............................................................................. 38

CERTIFICATE OF COMPLIANCE ................................................................... 39

# TABLE OF AUTHORITIES

*In re Coho Resources, Inc.*,
    348 F.3d 338 (5th Cir. 2003) .................................................................28

*In re Crocker*,
    941 F.3d 206 (5th Cir. 2019) ...............................................................28

*In re Dorvil*,
    665 B.R. 35 (Bankr. N.D. Tex. 2024)....................................................32

*Matter of Eichor*,
    2025 WL 619168 (5th Cir. 1/28/2025).....................................24, 25, 34

*Matter of Little Creek Dev. Co.*,
    779 F.2d 1068 (5th Cir. 1986) ..............................................................29

*In re McCool*,
    446 B.R. 819 (Bankr. N.D. Ohio 2010)................................................30

*Matter of McGuirt*,
    879 F.2d 182 (5th Cir. 1989) ...............................................................31

*In re McLean*,
    794 F.3d 1313 (11th Cir. 2015) ......................................................27, 28

*Matter of Nat'l Gypsum Co.*,
    118 F.3d 1056 (5th Cir. 1997) ..............................................................30

*In re North Richland Hills Alama, LLC*,
    2022 WL 2975121 (N.D. Bankr. 7/27/2022)........................................11

*In re Passa*,
    578 B.R. 898 (Bankr. D. Utah 2017).....................................................32

*Taggart v. Lorenzen*,
    587 U.S. 554 (2019)...................................................................*passim*

*Matter of Timely Secretarial Serv., Inc.*,
    987 F.2d 1167 (5th Cir. 1993) ..............................................................35

*In re Waldo*,
    417 B.R. 854 (Bankr. E.D. Tenn. 2009)................................................32

**Statutes**

11 U.S.C. § 105(a) ...................................................................................1, 9

11 U.S.C. § 362................................................................6, 8, 28, 29, 30

11 U.S.C. § 523................................................................8, 23, 29, 30, 31, 32

11 U.S.C. § 524..................................................... 1, 8, 11, 25, 27, 28, 29, 30, 32

11 U.S.C. § 727 ...................................................................................7, 8

28 U.S.C. § 158.............................................................................................2

28 U.S.C. § 1291 ..........................................................................................2

**Other Authorities**

Fed. R. Bankr. P. 9014 ..................................................................................35

Fed. R. Bankr. P. 9023 ..................................................................................11

Federal Rule of Civil Procedure 59(e) ........................................................11

Linda Coco, "Civil Contempt Order for Violations of the Bankruptcy
Discharge Injunction," 29 No. 1 J. Bankr. L. & Prac. NL Art. 4
(Feb. 2020) ..............................................................................................27

## JURISDICTIONAL STATEMENT

The Debtor, Scott Vincent Van Dyke, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 25, 2021, in the U.S. Bankruptcy Court for the Southern District of Texas.[1] On January 31, 2022, the Bankruptcy Court converted the bankruptcy case to a Chapter 7 proceeding under the Bankruptcy Code.[2] On December 6, 2022, the Bankruptcy Court entered its Order of Discharge in the bankruptcy case.[3]

On June 20, 2024, Mr. Van Dyke filed a motion for an order pursuant to 11 U.S.C. § 105(a) for Mary Katherine Alonso, Rudolph M. Culp, and Sarah Patel Pacheco to show cause why they should not be held in civil contempt for violating the post-discharge injunction under 11 U.S.C. § 524 by continuing to pursue a probate action raising pre-discharge claims against Mr. Van Dyke in Texas state court ("the Show Cause Motion").[4] On February 20, 2025, the bankruptcy judge entered an order from the bench denying the Show Cause Motion,[5] which was a final order and is the order for which review is sought here.

Mr. Van Dyke timely filed his Notice of Appeal from the Bankruptcy Court's denial of the Show Cause Motion in the District Court on March 5, 2025.[6] The

---

[1] ROA.161.
[2] ROA.252.
[3] ROA.290 – ROA.293.
[4] ROA.305.
[5] ROA.1626 – ROA.1627.
[6] ROA.1533 – ROA.1535.

1

District Court had jurisdiction over that appeal pursuant to 28 U.S.C. § 158(a)(1). The District Court entered its Order that is the final Judgment affirming the Bankruptcy Court's denial of Mr. Van Dyke's Show Cause Motion on July 18, 2025.[7] Mr. Van Dyke timely filed a notice of appeal from that Judgment on August 18, 2025,[8] and this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[7] ROA.1727 – ROA.1740.
[8] ROA.1725 – ROA.1726.

2

**STATEMENT OF THE ISSUES**

1.    Whether the District Court erred in holding that the Bankruptcy Court did not abuse its discretion in denying Mr. Van Dyke's motion for an order of civil contempt against the Appellees for violating the discharge order in his bankruptcy, where the Bankruptcy Court found that a violation of the discharge order had occurred but found that the Appellees had "a fair ground of doubt" as to the wrongfulness of their *post*-discharge conduct based on *pre*-discharge orders regarding the application of the automatic stay.

2.    Whether the District Court erred in affirming the Bankruptcy Court's ruling on Mr. Van Dyke's Show Cause Motion when that motion was not set for hearing and the Bankruptcy Court took no evidence and conducted no proceedings on the motion prior to ruling.

**STATEMENT OF THE CASE**

Because Mr. Van Dyke sought an order of civil contempt for violation of the discharge injunction, the inquiry into the objective reasonableness of the Appellees' conduct depends on an analysis of post-discharge circumstances. Therefore, the background facts relevant to that inquiry are best examined through a lens divided into pre- and post-discharge circumstances.

## A.    Pre-Discharge Circumstances

Suffering from the economic effects of the Covid pandemic, on May 25, 2021, Mr. Van Dyke filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas.[9] On January 31, 2022, the Bankruptcy Court converted the bankruptcy case to a Chapter 7 proceeding under the Bankruptcy Code.[10] On December 6, 2022, the Bankruptcy Court entered its Order of Discharge in the bankruptcy case.[11] While those are the core facts of any relevance to the Appellees' post-discharge conduct, the circuitous events in the interim period help to understand where the Bankruptcy Court and District Court erred in their review of the question of discharge-injunction violations by the Appellees.

---

[9] ROA.161.
[10] ROA.252.
[11] ROA.292 – ROA.293.

A little more than six months after Mr. Van Dyke filed for bankruptcy, on December 6, 2021, Mr. Van Dyke's mother, Mary Theresa Connelly Van Dyke, passed away.[12] A probate case arising from Mrs. Van Dyke's death was opened in Harris County, Texas, and on December 15, 2021, Mr. Van Dyke's sister, appellee Mary Katherine Alonso, filed an application for temporary administration.[13]

On December 17, 2021, Ms. Alonso filed a petition in the probate case alleging that Mr. Van Dyke breached a fiduciary duty to his mother pursuant to powers of attorney in his favor, and seeking declaratory judgment that a sale of Mrs. Van Dyke's townhome by Mr. Van Dyke, at that time with a scheduled closing date of December 21, 2021, was void.[14] Specifically, Ms. Alonso alleged in that petition that Mr. Van Dyke's power of attorney was from 2014, and that he breached his fiduciary duty to Mrs. Van Dyke on May 28, 2021.[15] Ms. Alonso also brought claims for declaratory judgment and constructive trust, likewise based on the same alleged transaction on May 28, 2021.[16]

On January 3, 2022, Mr. Van Dyke filed a suggestion of bankruptcy in the probate case;[17] he subsequently filed a motion to convert the bankruptcy case from Chapter 11 to Chapter 7, which was granted by the Bankruptcy Court on January 31,

---

[12] ROA.343.
[13] ROA.342.
[14] ROA.345, ROA.351, ROA.354.
[15] ROA.353.
[16] ROA.355.
[17] ROA.362.

2022.[18] Notices of the Chapter 7 bankruptcy case issued by the clerk of the Bankruptcy Court on January 31 and February 1, 2022, provided notice that the deadline for filing an objection to the dischargeability of debt was May 2, 2022, which date was subsequently extended by the Court to July 1, 2022.[19] Neither Ms. Alonso nor Appellee Rudolph Culp (the dependent administrator of Mrs. Van Dyke's estate) filed complaints or objections to the dischargeability of any debts of Mr. Van Dyke.[20]

Neither Ms. Alonso nor anyone else involved in Mrs. Van Dyke's probate case sought to object to the dischargeability of any of Mr. Van Dyke's debts alleged in the probate case. Instead, on May 6, 2022, Ms. Alonso and the Chapter 7 Trustee for Mr. Van Dyke's bankruptcy estate, Catherine Curtis, jointly moved to modify the automatic stay imposed by statute under 11 U.S.C. § 362, "to permit certain probate proceedings to continue."[21] On June 7, 2022, the Bankruptcy Court issued an order conditionally modifying the automatic stay.[22]

The modification of the automatic stay did not provide an unqualified license for Ms. Alonso to pursue all the claims she had raised in the probate case. The modification was subject to certain conditions, "partially lift[ing]" the stay: it "fully

---

[18] ROA.365.
[19] ROA.366 – ROA.369.
[20] ROA.1728 – ROA.1729.
[21] ROA.370.
[22] ROA.282.

preserved to a determination by the Bankruptcy Court as between the bankruptcy estate and any adverse or competing claim of Alonso to such interests of the Debtor," and it provided that such determination would be "determined exclusively by[] this United States Bankruptcy Court."[23]

On October 31, 2022, Mr. Van Dyke moved for entry of a discharge order.[24] In his motion, he noted that the only complaints to deny dischargeability had been filed in the "Noel Adversary" action and in the "Engelhart Adversary" action—on August 23, 2021, and May 2, 2022, respectively—which had been successfully mediated and memorialized in mediated settlement agreements on October 25, 2022.[25] He also noted that "[n]o party has filed an objection to the Debtor's discharge under 11 U.S.C. § 727."[26]

### B.     The Bankruptcy Court's Discharge Order, and Post-Discharge Conduct

On December 6, 2022, the Bankruptcy Court entered its Discharge Order in Mr. Van Dyke's bankruptcy case.[27] The Bankruptcy Court confirmed, "The deadline for objecting to the Debtor's discharge was July 1, 2022, and no party filed an

---

[23] ROA.283 – ROA.284.
[24] ROA.285.
[25] ROA.287.
[26] ROA.287.
[27] ROA.290; ROA.292.

objection to the Debtor's discharge under 11 U.S.C. § 727."[28] As a form discharge order, the order contained the proviso,

> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.[29]

By operation of law, the prior automatic stay under 11 U.S.C. § 362 terminated and was replaced by a post-discharge injunction under 11 U.S.C. § 524(a).[30] The bankruptcy clerk sent a copy of the discharge order to Ms. Alonso.[31] On January 26, 2023, Mr. Van Dyke filed an answer in the probate case and a motion for summary judgment in the probate case, raising as a defense the discharge in this bankruptcy case.[32]

Nevertheless, Ms. Alonso and Mr. Culp admit that they continued to seek discovery from Mr. Van Dyke after December 6, 2022.[33] And on February 9, 2024, Ms. Alonso and Mr. Culp filed a Second Amended Petition in the probate case against Mr. Van Dyke for the alleged breach of fiduciary duty. The allegations of

---

[28] ROA.290; *see also* ROA.436 and ROA.546 (Ms. Alonso admitting that she "failed to file a complaint under 11 U.S.C. § 523(a) objecting to the dischargeability of her debt against the Debtor.").

[29] ROA.292.

[30] *See* 11 U.S.C. §§ 362(c)(2)(C), 524(a)(2).

[31] ROA.296, ROA.1729.

[32] ROA.1729.

[33] ROA.545.

breach of fiduciary duty in the Second Amended Petition were premised on four powers of attorney in favor of Mr. Van Dyke executed between 2014 and 2019, and based on transactions occurring on agreements entered into by Mr. Van Dyke and others on May 24 and May 28, 2021, eventually leading to the sale of Mrs. Van Dyke's townhome on December 23, 2021.[34] The counsel who filed the Second Amended Petition on behalf of Ms. Alonso and Mr. Culp was the third Appellee here, Sarah Patel Pacheco.[35]

As the Appellees here actively pursued discovery in the probate case, despite having received notice of the discharge order in this litigation, Mr. Van Dyke's counsel asked them to dismiss their claims because they violated the post-discharge injunction.[36] When the Appellees refused to cease or dismiss their claims against Mr. Van Dyke in the probate case, on June 20, 2024, Mr. Van Dyke filed his Show Cause Motion, seeking under 11 U.S.C. § 105(a) to have the Appellees appear and show cause why an order of civil contempt and sanctions should not be imposed on them for violation of the discharge injunction.[37]

Immediately after Mr. Van Dyke filed the Show Cause Motion regarding violation of the *discharge* injunction, on June 21, 2024, Ms. Alonso and Mr. Culp

---

[34] ROA.402 – ROA.406.
[35] ROA.415.
[36] ROA.545 (admissions by Appellees that Mr. Van Dyke requested dismissal of the probate claims on May 24, and May 29, 2024).
[37] ROA.305.

filed before the Bankruptcy Court a motion to "clarify the order at Docket No. 176 conditionally modifying *the automatic stay* to permit certain probate proceedings to continue."[38] The order to which they sought "clarity" was the June 7, 2022, order modifying the automatic stay, even though the automatic stay had been replaced by the discharge injunction on December 6, 2022. As Mr. Van Dyke noted in his opposition to this "motion to clarify," the Appellees' "motion actually seeks to turn the order modifying the automatic stay into a judgment of nondischargeability of debt."[39]

The Appellees' conflation of the automatic stay and the conditional modification of that stay with their conduct in the wake of the discharge injunction became more pronounced in their opposition to Mr. Van Dyke's Show Cause Motion. In that Opposition, Appellees urged that their "fair ground of doubt" and "reasonable belief" that they were allowed to continue pursuing the claims against Mr. Van Dyke in the probate case after the discharge were based on the Bankruptcy Court's earlier conditional modification of the automatic stay.[40]

On July 16, 2024, the Bankruptcy Court granted the Appellees' "motion to clarify," providing that "[t]he Stay Order allows all Probate Estate claims against the Debtor to proceed in probate court" and that, despite the fact that a discharge

---

[38] ROA.419 (emphasis added).
[39] ROA.434.
[40] ROA.548.

injunction had been entered in the interim, "[t]his Order shall be immediately effective … upon its entry."[41] On July 24, 2024, Mr. Van Dyke timely filed a motion to alter or amend the Bankruptcy Court's order "clarifying" its conditional modification of the automatic stay, pursuant to Federal Rule of Civil Procedure 59(e) as incorporated by Fed. R. Bankr. P. 9023.[42] Mr. Van Dyke's motion sought amendment of that order to note that the Stay Order would only allow Probate Estate claims to proceed "until the entry of the order of discharge, at which time the claims would be discharged and barred by the post-discharge injunction of 11 U.S.C. § 524(b)(1), unless a judgment were entered determining that the claims against the Debtor are not dischargeable."[43] A review of the PACER docket in the bankruptcy case confirms that neither Mr. Van Dyke's Rule 59(e)/9023 motion, nor a subsequent motion filed on January 27, 2025, by Appellees to "confirm" the order conditionally modifying the automatic stay,[44] were ever ruled on.[45]

With no ruling on his Show Cause Motion and with Appellees continuing to assert that the modification of the automatic stay gave them license to ignore the discharge injunction, Mr. Van Dyke filed a new complaint in the Southern District

---

[41] ROA.553.

[42] ROA.784.

[43] ROA.784.

[44] ROA.846.

[45] *See* document nos. 361 and 374 in docket no. 21-60052 of the Bankr. S.D. Tex., and lack of other entries referring to disposition of those two documents. *See, e.g.*, *In re North Richland Hills Alama, LLC*, 2022 WL 2975121, *2 (N.D. Bankr. 7/27/2022) (taking judicial notice of dockets in Debtor's cases).

of Texas asserting claims against the Appellees for violation of the post-discharge injunction, and that suit was referred to the Bankruptcy Court for resolution in conjunction with this suit.[46]

In the meantime, the Appellees have continued to press forward with their claims against Mr. Van Dyke in the probate case, including the setting of a trial on June 2, 2025.[47] Appellees noticed the deposition of Mr. Van Dyke in the probate case for February 24, 2025.[48] In response, on February 12, 2025, Mr. Van Dyke filed an application for TRO and for preliminary injunction in the Bankruptcy Court.[49]

### C.    The Bankruptcy Court's Proceedings on the Discharge Injunction Violation

While the threads of litigation and claims multiplied, the Bankruptcy Court and the litigants worked cooperatively to untangle them and order them appropriately for hearing and resolution by the Bankruptcy Court. Ultimately though, the Bankruptcy Court remained intractably bound up in the Appellees' suggestion that the modification of the automatic stay informed whether the Appellees' violation of the discharge injunction was objectively reasonable.

On October 8, 2024, Judge Lopez of the Bankruptcy Court held a status conference with counsel to "talk scheduling, timing, as to what thoughts the parties

---

[46] ROA.925.
[47] ROA.1036, ROA.1039.
[48] ROA.1042.
[49] ROA.926.

had to at least get it on the calendar."[50] As Mr. Van Dyke's counsel explained—apologetically acknowledging the multiple steps he had taken to address the discharge injunction may have gotten "a little procedurally strange, maybe even squirrely," and had "kind of cluttered things up with procedure"[51]— he had filed the separate lawsuit out of concern for whether the Show Cause Motion fully teed up the discharge-injunction issue.[52]

The parties and the Bankruptcy Court then treated the scheduling-and-logistics discussion as involving two facets—the legal question of the effect of the discharge order on the modified automatic stay that had been raised in the Show Cause Motion and in the motion for new trial on the "clarification" of the modification of the stay, and then the question of contempt damages if the court determined that the discharge injunction had been violated:

> THE COURT: Why don't we just—does it make sense for me to just—is there stuff already? I haven't studied the district court docket very carefully. Are your argument laid out in the district court, briefing or—
> …
>
> MR. PROBUS [Mr. Van Dyke's counsel]: But like I said, it's just—you can make this determination either on, I guess, on my motion for

---

[50] ROA.1466, ROA.1467.

[51] ROA.1468.

[52] ROA.1469. This interaction of the Bankruptcy Court and the parties' counsel in the October 8, 2024, status conference is contrary to the District Court's subsequent characterization of Mr. Van Dyke's separate lawsuit as being an "attempt to end-run the jurisdiction of the Bankruptcy Court." ROA.1736. The Bankruptcy Court judge expressly noted he had "no issues with kind of where things were" and that, "if there's something live in front of the district court, then go argue there." ROA.1470.

new trial that I filed on their clarification or in the show—I think it's best briefed in the show cause. And I think that's teed up and ready.

THE COURT: Yeah. Why don't we just take it up there then in the show—in connection with the show cause? …

MR. PROBUS: I'm okay on the papers, Your Honor. Frankly, the quicker the better, and then the parties move on down the road.

THE COURT: Let me read the papers and then just maybe kind of a— it's been a while since I looked at this, so maybe kind of a refresher. Let me just take a quick look, read this stuff over the weekend, and then if I feel like I can do it on the papers, I'll do it. If not, then we'll talk scheduling. …

THE COURT: I had one additional question which was, can I answer the question that you all have in connection with the show cause? In other words, can I grant relief or deny relief based on that that answers the question? I just want to make sure that the issue is teed up in a way that I can definitively answer the question one way or the other with respect to the probate matters. That's the question that I've got. Can it really be teed up in connection with the show cause? …

MR. PROBUS: In other words, if you look at the papers and you answer the legal question of whether it was discharged or not and you say, yes, it was discharged, then you could decide whether or not you want to issue a show cause order in connection with your order or memorandum opinion and have them come in and say, okay, you did violate 524, what are we going to do about this and what are damages, attorneys' fees and whatnot. …

THE COURT: No, I think that's clean. That makes sense.[53]

Accordingly, while there was much discussion throughout the October 8, 2024 status conference about deciding issues on the briefs, at the conclusion of the conversation the parties and Bankruptcy Court agreed that the legal issue of whether the

---

[53] ROA.1471 – ROA.1474.

Appellees' claims against Mr. Van Dyke in the probate case violated the bankruptcy discharge could be decided on the briefs, but that if a discharge injunction violation was found to have occurred then there would be a hearing on the remedy of ordering a civil contempt and sanctions to which Mr. Van Dyke would be entitled.

After the October 8, 2024 status conference, the Appellees continued to take actions in the probate case outlined above, with no decisions issued by the Bankruptcy Court. In light of this conduct, Mr. Van Dyke sent a letter to the bankruptcy judge on January 24, 2025, acknowledging the court's busy-ness and seeking rulings consistent with the rights discharged debtors are afforded by law[54]; and on February 12, 2025, faced with a deposition noticed less than two weeks later, Mr. Van Dyke filed his application for TRO.[55] On February 20, 2025, the Bankruptcy Court held a hearing on the TRO.[56]

During that hearing, Appellee Ms. Pacheco acknowledged that Ms. Alonso's and Mr. Culp's claims in the probate case arose from acts where "most of it happened before Mrs. Van Dyke died" in December 2021.[57] The Appellees' counsel also conceded that, "if the claims are discharged, I don't think that we get those"; and

---

[54] ROA.919.
[55] ROA.926.
[56] ROA.1589, ROA.1593.
[57] ROA.1601.

15

that "[t]he discharge is the collection of—of the debt. Doesn't mean that the debt doesn't exist. So—so—… we can't collect. We can't offset."[58]

The Bankruptcy Court noted that "I'm just dealing with kind of the—what is on paper and whether it is affected by the discharge order." The court recounted the chronology of the bankruptcy proceedings, including the limited scope of his modification of the automatic stay.[59] The bankruptcy court specified that notice was provided in May 2022 "that proofs of claims were due on August 22nd, 2022"[60]; that, "[t]o date, I know that no proof of claim was filed"[61]; and that, "[o]n December 2nd, the Bankruptcy Court, me, entered an order of discharge."[62] The court also recounted that in July 2024 it had "issued an order clarifying that parties could proceed against Van Dyke in Probate Court," referring to the grant of Appellees' motion to clarify his order modifying the automatic stay; and that "to [his] knowledge" none of his orders had been appealed"[63]; but neglected to note that that July 2024 order was subject to a still-pending Rule 59(e)/9023 motion by Mr. Van Dyke.

The Bankruptcy Court then issued its "rul[ing] on the TRO motion, which also really serves as a basis to rule on several other matters under the 105 matter."[64]

---

[58] ROA.1603 – ROA.1604.
[59] ROA.1609 – ROA.1612.
[60] ROA.1612.
[61] ROA.1613.
[62] ROA.1613. This appears to be a typo in the transcript, as the order of discharge was entered on December 6, 2022.
[63] ROA.1614.
[64] ROA.1617.

The court then ruled, "So any claims pre-January 30, 2022, are discharged. … So Alonso never sought to seek—never—there's been no exceptions to any of the discharges under 523(a)(2), and (4), (6). And those events have—that has expired. That expired in July of 2022."[65] The court ruled further,

> So I'm just going to say seeking monetary damages on anything that occurred pre-January 30, 2022, or even seeking, he tried to have asserting a breach of fiduciary duty claim in asking the Court to establish—to find damages on that, *that's been discharged*. Can't do anything about that. … That would be *prohibited by the discharge injunction*.[66]

The Bankruptcy Court then granted the TRO "to the extent the deposition is in furtherance of damages based on breach of fiduciary duty for anything pre-conversion date."[67] The Bankruptcy Court's accompanying written order entered the same day specifically only addressed the TRO, and spelled out the limited scope of the claims *not* enjoined by the discharge order: "Claims (i) based on acts that occurred *on or after January 30, 2022*, if any, (ii) a request for accounting, and (iii) declaratory judgment are not enjoined by the discharge order."[68]

At the hearing, however, the Bankruptcy Court then moved beyond the TRO motion that had been noticed for hearing to the "separate pending matter for request to hold [the Appellees] … in contempt for violating the discharge."[69] (No separate

---

[65] ROA.1619.
[66] ROA.1621 (emphasis added).
[67] ROA.1625 – ROA.1626.
[68] ROA.1481 (emphasis added).
[69] ROA.1626.

written order disposed of the Show Cause Motion). The Bankruptcy Court cited the U.S. Supreme Court's decision in *Taggart v. Lorenzen*, 587 U.S. 554 (2019), and held that, "[b]ased on what I just walked through, I find no basis to find a violation warranting civil contempt here. There was fair ground to proceed."[70] Presumably referring to his original order granting a conditional modification of the automatic stay and his subsequent order granting the motion to "clarify" the modification of the automatic stay, the Bankruptcy Court found, "I entered an order saying they could proceed. Two orders from me saying they could proceed. The second order was entered post-discharge, and not contested by anyone or appealed. So I hope this provides some guidance and resolves all matters before the Court."[71] The Bankruptcy Court did not reference that the second, post-discharge order (1) referenced the modification of the automatic stay that *preceded* the discharge order, and (2) was subject to a still-pending Rule 59(e)/9023 motion (such that it was, indeed, "contested"). Nor did the Bankruptcy Court take any evidence on the Show Cause Motion, which had not been noticed for hearing on that day.

As a result of the Bankruptcy Court's refusal to enforce the discharge order, the claims against Mr. Van Dyke in the probate case were tried beginning June 9, 2025, forcing him to incur significant litigation expense.

---

[70] ROA.1626 – ROA.1627.
[71] ROA.1627.

### D.    The Appeal to the District Court

Mr. Van Dyke timely filed his Notice of Appeal from the Bankruptcy Court's denial of the Show Cause Motion in the District Court on March 5, 2025.[72] On July 18, 2025, the District Court entered an Order affirming the Bankruptcy Court's denial of Mr. Van Dyke's request for entry of an order of civil contempt and sanctions against the Appellees.[73]

While the District Court attempted to distill the morass of various pleadings, it characterized a couple background facts incorrectly. For example, the District Court recounted that, at the October 8, 2024, status conference, "both sides agreed to allow the Bankruptcy Court to dispose of the issue [of 'whether the post-discharge injunction applied to the Probate Lawsuit and the extent to which any action should be taken against Appellees'] based on the pleadings, and that an evidentiary hearing was not needed."[74] As detailed above, in actuality the parties and the Bankruptcy Court discussed those as two separate issues, and while Mr. Van Dyke's counsel agreed that whether the post-discharge injunction applied to the probate case could be determined on the pleadings, Mr. Van Dyke's counsel understood that, if it was

---

[72] ROA.1533 – ROA.1535.
[73] ROA.1727.
[74] ROA.1731.

determined the injunction did apply, any contempt and sanctions against the Appellees would then be subject to a hearing.[75]

Another example of the District Court's tangled view of the background facts is its finding that "the Appellees['] action in filing and pursuing the Probate Action was, at least in part, specifically allowed by four different orders by the Bankruptcy Court—including one extension agreed to by the Appellant."[76] The "four orders" identified by the District Court, however, were (1) the June 7, 2022, order conditionally modifying the automatic stay,[77] which would not have affected the Appellees' actions after the *subsequently-issued discharge injunction*; (2) the July 16, 2024, order clarifying the conditional modification of the automatic stay,[78] which was not a final order because it remained subject to a never-ruled-on Rule 59(e)/9023 motion; (3) the February 20, 2025, written order granting the TRO in part, which allowed pursuit of claims based on acts occurring after January 31, 2022, which were not barred by the discharge order,[79] and which actually confirmed that the claims arising from acts prior to January 31, 2022 *were barred by the discharge order*; and (4) a March 4, 2025 order entered on a joint motion by Mr. Van Dyke and the

---

[75] ROA.1474 ("MR. PROBUS: In other words, if you look at the papers and you answer the legal question of whether it was discharged or not and you say, yes, it was discharged, then you could decide whether or not you want to … have them come in and say, okay, you did violate 524, what are we going to do about this and what are damages, attorneys' fees and whatnot.").
[76] ROA.1733.
[77] ROA.1729.
[78] ROA.1730.
[79] ROA.1733.

Appellees *to extend the TRO*,[80] which prohibited the Appellees from pursuing the claims barred by the discharge order.

The District Court then held that the Bankruptcy Court did not abuse its discretion because of the original order modifying the automatic stay and the second order clarifying that order: "Thus, the Appellees not only were justified in proceeding in the probate court, but they also had the Bankruptcy Court's explicit permission to do so."[81] The District Court held that Mr. Van Dyke's argument arising from the failure to notice a hearing on the Show Cause Order or to consider evidence was "meritless"[82]; because "both sides told the Bankruptcy Court that the issue was teed up and that it could decide the matter 'on the papers,'" such that "[t]o now claim that the Bankruptcy Court erred in not holding an evidentiary hearing is incredulous."[83] Accordingly, the District Court affirmed the Bankruptcy Court's

---

[80] ROA.1733.

[81] ROA.1735.

[82] ROA.1736.

[83] ROA.1738. The District Court also characterized this assignment of error by Mr. Van Dyke as "extremely troublesome" and "arguably … a demonstration of how counsel misled the Bankruptcy Court[.]" ROA.1739. While an incomplete reading of the transcript of the October 8, 2024, status conference might justify leaving the District Court with this impression, it is clear that, in the heart of that status conference, Mr. Van Dyke's counsel informed the Bankruptcy Court that the legal issue of whether the actions in the probate case violated the discharge injunction could take place on the pleadings, but that any subsequent determination of whether such a violation justified a civil contempt finding and sanctions would be a separate issue for hearing, and that the Bankruptcy Court agreed. ROA.1474 ("MR. PROBUS: In other words, if you look at the papers and you answer the legal question of whether it was discharged or not and you say, yes, it was discharged, then you … have them come in and say, okay, you did violate 524, what are we going to do about this and what are damages, attorneys' fees and whatnot. … THE COURT: No, I think that's clean. That makes sense."). There was no "misleading" by Mr. Van Dyke's counsel, at any point, as the

decision to not issue an order of contempt as to the Appellees' violation of the

discharge injunction.[84]

---

parties and the Bankruptcy Court wrestled with the complex and multi-faceted set of disputes that
had arisen.

[84] ROA.1740.

**SUMMARY OF ARGUMENT**

The Bankruptcy Court correctly found that the Appellees had violated the discharge order by pursuing a pre-petition claim against Mr. Van Dyke for breach of fiduciary duty. Nonetheless, the Bankruptcy Court erred, and the District Court erred by affirming it, when it refused to hold the Appellees' in contempt based on a finding that Appellees had "fair ground of doubt" about the reasonableness of their post-discharge activities based on rulings made by the Bankruptcy Court granting relief from the automatic stay. As a matter of law, there can be no objective "fair ground of doubt" about whether relief from the automatic stay grants an exception to discharge because of the different purposes behind the stay and the discharge, the different standards for exemptions from the stay and for exceptions from discharge, the different procedures for obtaining a stay exemption and a discharge exception, and the admitted failure of the Appellees to comply with the explicit procedure required by 11 U.S.C. § 523(c) to obtain a discharge exception for a claim relating to fraud in connection with a fiduciary relationship. Under *Taggart v. Lorenzen*, 587 U.S. 554 (2019), the standard is objective reasonableness, not based on the creditor's subjective beliefs, and no objectively reasonable creditor could have believed that relief from the automatic stay granted an exception from discharge.

Additionally, the Bankruptcy Court erred, and the District Court erred by affirming it, when it ruled on Mr. Van Dyke's Show Cause Motion without holding

23

a hearing or giving Mr. Van Dyke the opportunity to present any evidence of the Appellees' contempt and the damages caused thereby.  This Court should reverse the District Court and Bankruptcy Court's rulings and remand for a hearing on Mr. Van Dyke's Show Cause Motion so that the Bankruptcy Court can determine in the first instance the proper sanction for the Appellee's violations of the discharge order.

## ARGUMENT

The Bankruptcy Court abused its discretion by failing to issue an order of contempt against Appellees after finding that they had violated the discharge injunction (1) by basing the withholding of a contempt order on the ***pre-discharge*** modification of the automatic stay, and (2) by reaching its denial of contempt without having noticed the Show Cause Motion for hearing or taking any evidence on the issue of contempt. The District Court likewise erred by affirming this decision.

### A.    Standard of Review

In an appeal from a District Court's decision reviewing a Bankruptcy Court's decision on whether to hold a party in contempt for violation of a discharge order, this Court "'review[s] the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied.'" *Matter of Eichor*, 2025 WL 619168, *3 (5th Cir. 1/28/2025) (unpub.) (on petition for reh'g) (quoting *Nabors Offshore Corp. v. Whistler Energy II, L.L.C.*, 931

24

F.3d 432, 441 (5th Cir. 2019) (other internal quotation marks and citation omitted)). "'Acting as a second review court, we review a bankruptcy court's legal conclusions de novo and its findings of fact for clear error.'" *Id.* (quoting *21st Mortg. Corp. v. Glenn*, 900 F.3d 187, 189 (5th Cir. 2018) (other internal quotation marks and citation omitted)). "Under clear-error review, '[w]e accept the bankruptcy court's findings of fact … unless we are left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (other internal quotation marks and citation omitted)).

**B.** **The District Court Erred, and the Bankruptcy Court Abused its Discretion, in Holding that Appellees Could Base a "Fair Ground of Doubt" as to the Wrongfulness of *Post*-Discharge Conduct on a *Pre*-Discharge Modification of the Automatic Stay**

A discharge in a Bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

In 2019, the U.S. Supreme Court held definitively that the standard to be applied to whether contempt is appropriate for the violation of a discharge order under the Bankruptcy Code is a standard of objective reasonableness:

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

*Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019) (italics in original). The *Taggart* Court landed on this formulation by rejecting both the Bankruptcy Court's standard "akin to 'strict liability'" and the Ninth Circuit's "subjective standard" based on a creditor's "good faith belief." While the *Taggart* Court did not provide much explicit detail on what would constitute a "fair ground of doubt," it does not include the subjective beliefs and doubts of the creditor, but falls within the objective-reasonableness rubric: "This standard is generally an *objective* one. We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 561 (italics in original); *see also id.* at 562 ("Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope.").

This objective reasonableness standard does not permit a review of a party's beliefs about procedure unrelated to the discharge order (such as the Appellees beliefs about the modified automatic stay here), but focuses on the discharge order itself: "These provisions authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful ***under the discharge order***." *Id.* at 560 (emphasis added). That this specifically does not include beliefs about compliance with the pre-discharge

26

automatic stay is borne out by the *Taggart* Court and by decisions of the Courts of Appeals and by treatises that recognize the fundamental distinction between the purpose of the automatic stay and of the discharge injunction:

- "The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period." *Id.* at 565.

- "[A]ny comparison between the discharge injunction and an automatic stay is of no avail because a discharge is final: it marks the end of adjudication of claims against a bankruptcy estate. By contrast, … the automatic stay protects creditors and facilitates the distribution of a debtor's assets … during the pendency of the bankruptcy proceeding." *In re McLean*, 794 F.3d 1313, 1322 (11th Cir. 2015).

- "Section 524 is unlike section 362(k)(2), which provides that a creditor who acted in good faith and violated the automatic stay has such a limited defense." Linda Coco, "Civil Contempt Order for Violations of the Bankruptcy Discharge Injunction," 29 No. 1 J. Bankr. L. & Prac. NL Art. 4 (Feb. 2020).

The purpose and effect of the automatic stay is distinct from the purpose and effect of the discharge injunction. While the automatic stay is intended to protect

27

*creditors* by ensuring preservation of the debtor's assets, *McLean*, 794 F.3d at 1322, the discharge injunction is intended to protect the debtor and his interest in the "fresh start" provided by the Bankruptcy Code. *See, e.g.*, *In re Crocker*, 941 F.3d 206, 218 (5th Cir. 2019) ("Discharge exceptions are to be construed narrowly and in favor of the debtor in order to further the Bankruptcy Code's purpose of giving debtors a fresh start.") (quote cleaned up); *In re Coho Resources, Inc.*, 348 F.3d 338, 342 (5th Cir. 2003) ("The bankruptcy discharge and § 524 injunction serve to give the *debtor* a financial fresh start.") (quotation cleaned up, italics in original).

In addition to the distinction between the purposes of the automatic stay and the discharge order, a consideration of the grounds for relief from a stay and an exception from discharge, as well as the procedure for obtaining both, demonstrates that no objectively reasonable creditor could believe that obtaining relief from the stay granted an exception to the discharge.

    *i.*    *The automatic stay under 11 U.S.C. § 362.*

The automatic stay is created by Section 362(a) of the Bankruptcy Code and applies "automatically" as soon as a petition is filed. The stay is subject to an extensive list of twenty-nine (29) explicit exemptions under Section 362(b). Additionally, creditors have the right to seek relief from the stay under Section 362(d)(1) "for cause," which is accompanied by an illustrative but not exhaustive example of a possible cause for a stay exemption. *See,* 11 U.S.C. § 362(d)(1) (a

28

creditor can seek relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (noting that "for cause" is "a term not defined in the statue so as to afford flexibility to the bankruptcy courts," and that ""Cause" is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."") (citing *In re Victory Const. Co. Inc.*, 9 B.R. 549, 550 (Bankr. C.D. Cal. 1981)).

While embracing an extremely broad standard for relief from the automatic stay, the Code also gives the automatic stay teeth by explicitly granting the debtor an express right of action to enforce the automatic stay, including the right to recover costs, attorney's fees, and punitive damages for automatic stay violations. *See* 11 U.S.C. § 362(k).

      ii.     *The discharge injunction under 11 U.S.C. § 524(a).*

By comparison, the discharge injunction under Section 524(a) of the Code accrues only when a debtor has successfully navigated the Bankruptcy Code's requirements to obtain a discharge under one of the relevant Chapters. The discharge is subject to twenty (20) explicit exceptions articulated in 11 U.S.C. § 523(a), which bear little resemblance to the stay exemptions under 11 U.S.C. § 362(b). *Compare, e.g.,* 11 U.S.C. § 523(a)(8) (excepting certain student loans from discharge) *with* 11 U.S.C. § 362(b) (containing no exemption to the stay for any student loan). Further,

there is no "for cause" catch-all exception to the discharge injunction; creditors must fit their debt into one of Section 523(a)'s explicit exceptions or the debt is discharged.

Section 524 also has a completely different enforcement mechanism than Section 362. Whereas Congress created a private right of action for violations of the automatic stay, there is no private right of action for violations of the discharge injunction, which must be enforced either through a "motion for contempt … [or] a declaratory judgment action." *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997). *See also In re McCool*, 446 B.R. 819, 823 n.1 (Bankr. N.D. Ohio 2010) ("[U]nlike the automatic stay, a debtor seeking to address a creditor's violation of the discharge injunction has no private right of action, but instead, must rely on a court's powers of contempt when seeking redress. Also, an award of damages to a debtor is mandatory when a creditor is found to have willfully violated the automatic stay. The same is not true for a violation of the discharge injunction.").

Finally, it is particularly noteworthy in this case that 11 U.S.C. § 523(a)(4) explicitly excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity," which might cover the claims asserted by Ms. Alonso in the probate proceeding. But importantly, Section 523(a)(4) is *not* self-executing. In order to obtain an exception from discharge under Section 523(a)(4), a creditor must

30

request notice and a hearing and the Bankruptcy Court must expressly determine that the debt is excepted from discharge under the relevant section. *See* 11 U.S.C. § 523(c)(1); *Matter of McGuirt*, 879 F.2d 182, 183 (5th Cir. 1989) ("[B]y operation of section 523(c), non-dischargeable debts are nevertheless discharged unless, upon request of the creditor within the requisite time period, the bankruptcy court determines that the debt is to be excepted from discharge."). The Bankruptcy Court here found that neither Ms. Alonso nor Mr. Cupp secured any exception from discharge under 11 U.S.C. § 523(c). *See* ROA.1619 ("So Alonso never sought to seek – never – there's been no exceptions to any of the discharges under 523(a)(2), and (4), (6). And those events have – that has expired. That expired in July of 2022. … Culp hasn't asserted any 523(a)(2), (4), and (6) either."). Accordingly, any possible exception for discharge under Section 523(a)(4) for Ms. Alonso's pre-petition claims has now been waived.

### iii.    *The Bankruptcy Court erred by conflating the automatic stay and the discharge.*

Given the different purposes behind the automatic stay and the discharge, the different exemptions/exceptions that apply to the stay and the discharge, the different procedures and standards for obtaining relief from the stay and an exception from the discharge, and in particular the fact that a discharge exception for fiduciary fraud requires a creditor to follow a specific procedure that was not followed here, no reasonable creditor could believe that relief from the stay to pursue a claim for

31

fiduciary fraud could act as an exception to the discharge for fiduciary fraud. There can be "no fair ground of doubt" that obtaining an exemption from the automatic stay would grant an exception to discharge under Section 523(a) or comply with the procedures of Section 523(c) for obtaining an exception under Section 523(a)(4). And crucially, the Supreme Court in *Taggart* held quite clearly that "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt." *Taggart*, 587 U.S. at 555.

Recognizing the fundamental difference between the automatic stay and the discharge, numerous courts have recognized that obtaining an exemption or relief from the automatic stay does not grant an exception to discharge. *See, e.g., In re Waldo*, 417 B.R. 854, 889-90 (Bankr. E.D. Tenn. 2009) ("[A]lthough the presentment of the post-dated checks did not violate the automatic stay … once the Debtors received their discharge, the discharge injunction of § 524(a), which does not contain an exception for presentment of checks, went into effect, and all actions to collect their pre-petition attorneys' fees by Clark & Washington and Mr. Crawford were in violation thereof."); *In re Passa*, 578 B.R. 898, 905 (Bankr. D. Utah 2017) ("A violation of the discharge injunction involves a separate legal standard and analysis that is distinct from a violation of the automatic stay."); *In re Dorvil*, 665 B.R. 35, 50 (Bankr. N.D. Tex. 2024) ("[T]he debate over whether the automatic stay does or does not apply to a debt that is subject to a pending § 523(a) proceeding is

32

misguided. The automatic stay remains in effect until it is lifted by the bankruptcy court, or until the discharge order is entered. Once the discharge order is entered, the automatic stay ceases to apply, and the discharge injunction comes into force and effect [regardless of a pending action to determine the applicability of a discharge exception].").

Accordingly, the holdings by the Bankruptcy Court and the District Court here, that the Bankruptcy Court's pre-discharge modification of the automatic stay provides a basis for a "fair ground of doubt" for the Appellees to avoid an order of civil contempt for their violation of the discharge injunction, are incorrect as a matter of law. As a matter of law, no creditor could believe that compliance with the separate standards and procedures to obtain an exemption from the automatic stay could constitute compliance with the standards and procedures to obtain a discharge exception. Thus, information regarding the creditor's knowledge about the scope of the ***automatic stay*** is not relevant, as a matter of law, to the objective reasonableness of her belief about the scope of the ***discharge injunction***. The same would likewise apply to the subsequent non-final order "clarifying" the modification of the automatic stay, as it still involves the legally inapt comparison between the automatic stay and the discharge injunction.

This is particularly true here. Objectively, the Bankruptcy Court's pronouncement in July 2022 that action may be taken *under the automatic stay* has

no bearing on whether actions taken *after a discharge injunction* effective the following December 2022 are allowed under that subsequent injunction. The discharge injunction issued on December 6, 2022, was not before the court in July 2022, so reliance on the July 2022 order to justify conduct after the December 6, 2022, injunction is *per se* not objectively reasonable.

Apart from the legal error, as factual findings, the Bankruptcy Court's and District Court's reliance on the July 2024 order "clarifying" the modification of the automatic stay, the February 2025 TRO, or the March 2025 extension of the TRO as basis for Appellees' "fair ground of doubt" present clear error. This Court should have a "definite and firm conviction that a mistake has been committed," *Eichor*, 2025 WL 619168 at *3, in the reliance on those three orders because: (1) the July 2024 order clarifying the modification of the automatic stay was not just limited in relevance to the automatic stay and therefore immaterial to the discharge injunction, but was never a final order as it was subject to a never-ruled-on Rule 59(e)/9023 motion by Mr. Van Dyke; (2) the February 2025 TRO actually confirmed that all claims based on acts that occurred prior to January 31, 2022, which subsumes all of Appellees' claims in the petitions filed against Mr. Van Dyke in the probate case, are discharged and that only claims based on acts occurring after January 31, 2022, were not; and (3) the March 2025 extension of that TRO would have repeated this

34

critical distinction and would have prevented the Appellees from prosecuting the breach of fiduciary claims in the probate case.

In essence, then, both as a matter of law and as a matter of clear error in the Bankruptcy Court's and District Court's findings, there is no objectively reasonable basis for a "fair ground of doubt" underlying the Bankruptcy Court's decision to not issue an order of contempt for the Appellees' violation of the discharge order.

**C.  The Bankruptcy Court Erred, which Error was Magnified and Repeated by the District Court's Affirmance, in Ruling on Mr. Van Dyke's Show Cause Motion Without Noticing it for Hearing or Taking Evidence**

Because it was a contested matter, Mr. Van Dyke was entitled to receive "reasonable notice and opportunity for hearing" on his Show Cause Motion. Fed. R. Bankr. P. 9014; *Matter of Timely Secretarial Serv., Inc.*, 987 F.2d 1167, 1171 (5th Cir. 1993). It is indisputable that the February 20, 2025, hearing where the Bankruptcy Court took up the Show Cause Motion and denied the issuance of a contempt order for the Appellees' violation of the discharge injunction was not noticed as a hearing on the Show Cause Motion, that the only matter noticed for hearing that date was Mr. Van Dyke's TRO to halt the upcoming deposition of him in the probate case. While the District Court dispensed with this error by finding that

"both sides told the Bankruptcy Court that the issue was teed up and that it could decide the matter 'on the papers,'"[85] that finding is clearly erroneous.

As detailed above, the Bankruptcy Court had a detailed exchange with the parties' counsel about whether the show-cause issues could be determined on the briefs, and at the end of that exchange Mr. Van Dyke's counsel clearly delineated between the legal issue of whether the discharge injunction had been violated, which he agreed could be determined on the briefs, and the issue of whether contempt should be ordered and relief awarded, which may need to be subject to a subsequent hearing: "In other words, if you look at the papers and you answer the legal question of whether it was discharged or not and you say, yes, it was discharged, then you could decide whether … [to] have them come in and say, okay, you did violate 524, what are we going to do about this and what are damages, attorneys' fees and whatnot."[86] And the Bankruptcy Court agreed, saying, "I think that's clean. That makes sense."[87]

Therefore, it was clear error for the District Court to dispense with this assigned error by finding that "both sides told the Bankruptcy Court that the issue was teed up and that it could decide the matter 'on the papers.'"[88]

---

[85] ROA.1738.
[86] ROA.1474.
[87] ROA.1474.
[88] ROA.1738.

## CONCLUSION

For these reasons, Mr. Van Dyke asks that this Court reverse the District Court's Judgment that affirmed the Bankruptcy Court's denial of Mr. Van Dyke's motion seeking an order that the Appellees are in civil contempt for violation of the discharge injunction, hold that as a matter of law Appellees cannot have had an objectively reasonable "fair ground of doubt" about whether their relief from the stay granted them an exception to the discharge order, and remand the matter to the Bankruptcy Court to hold a hearing in the first instance to determine the proper sanction for Appellees' violation of the discharge injunction.

Respectfully submitted,

*/s/   Jason W. Burge*

| | |
|---|---|
| Jason W. Burge (La. #30420) | Matthew B. Probus (Tex. #16341200) |
| *Lead Counsel* | THE PROBUS LAW FIRM |
| Rebekka C. Veith (La. #36062) | 10497 Town & Country Way |
| Harvey S. Bartlett III (La. #26795) | Ste. 930 |
| FISHMAN HAYGOOD L.L.P. | Houston, TX 77024 |
| 201 Saint Charles Avenue, Ste. 4600 | (713) 258-2700 |
| New Orleans, LA 70170 | matthewprobus@theprobuslawfirm.com |
| (504) 586-5252 ; (504) 586-5250 fax | |
| rveith@fishmanhaygood.com | |
| jburge@fishmanhaygood.com | |
| tbartlett@fishmanhaygood.com | |

*Attorneys for Appellant Scott Vincent Van Dyke*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2025, I electronically filed the foregoing with the Clerk of Court via the court CM/ECF system, which sent a notice of filing to all counsel of record.

*/s/     Jason W. Burge*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This Brief contains less than 13,000 words, exclusive of parts exempted by Fed. R. App. P. 32(f) and 32.2. The exact word count is 8,450 exclusive of parts exempted by Fed. R. App. P. 32(f) and 32.2.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font in text and 12-point Times New Roman font in footnotes.

Date: November 13, 2025          Respectfully submitted,

         <u>/s/  *Jason W. Burge*          </u>